AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>CHESTON KONTRAS PHILPOT<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>) |

Case No.  20-6113-SNOW

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____February 1, 2020_____ in the county of _____Broward_____ in the _____Southern_____ District of _____Florida_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g) | Possession of a Firearm and Ammunition by a Convicted Felon. |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

_____Samuel H. Band, Special Agent, FBI_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/3/20

_____
*Judge's signature*

City and state: _____Fort Lauderdale, Florida_____

_____Lurana S. Snow, United States Magistrate Judge_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your Affiant, Samuel Band, being duly sworn, deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), currently assigned to the Violent Crimes and Fugitive Task Force of the FBI's Miami Division.  My duties involve the investigation of a variety of violations of federal offenses, including bank robberies, Hobbs Act robberies, extortion, and other violations of federal law.  I have been an FBI Special Agent since February 2019 and have been assigned to the Miami Division since that time.  Prior to becoming an FBI Special Agent, I was a law enforcement officer in Virginia with the Fairfax County Police Department from 2013 to 2018. My experience with firearms include being trained by my former police department and the FBI in handling, shooting, and maintaining firearms to include handguns, rifles, and shotguns.

2.      This Affidavit is submitted for the limited purpose of establishing probable cause that CHESTON KONTRAS PHILPOT ("PHILPOT") did knowingly and unlawfully possess a firearm and ammunition as a convicted felon, in violation of Title 18, United States Code, Section 922(g).

3.      The statements contained in this Affidavit are based on my personal knowledge, as well as information relayed to me by other law enforcement officials and civilian witnesses involved in this investigation.  I have not included in this Affidavit each and every fact known to me.  Rather, I have included only the facts that are sufficient to establish probable cause for the issuance of a criminal complaint against PHILPOT for the above-described criminal violation.

## PROBABLE CAUSE

4.      On or about February 1, 2020, at approximately 8:20 p.m., an individual later identified as PHILPOT, was observed by law enforcement personnel in the Seminole Hollywood Hard Rock Hotel and Casino located at 1 Seminole Way, Hollywood, Florida.

5.      PHILPOT was wearing a silver badge around his neck and was carrying a black backpack. The badge did not match that of the local law enforcement within the jurisdiction, Seminole Department, nor was the badge consistent with the uniform worn by the Hollywood Hard Rock Hotel and Casino security staff.  PHILPOT was approached by law enforcement and was questioned about the badge.

6.      PHILPOT explained that he was a security guard for a music artist. Law enforcement questioned whether he was armed. PHILPOT initially told law enforcement he was armed and his concealed carry permit was in the car. Soon after, he said he was not carrying a firearm and did not have a concealed carry permit.

7.      PHILPOT provided two forms of identification with the name of "CHESTON KONTRAS PHILPOT." When asked if he had been arrested in the past, PHILPOT explained he had been arrested 10 years ago for a marijuana charge. Law enforcement requested dispatch to run the information from the provided identification through law enforcement databases to determine if there was a concealed carry permit or a criminal history associated with the information provided by PHILPOT. Results revealed that there was no concealed carry permit or criminal history associated with the information provided.

8.      Law enforcement returned the identification to PHILPOT and requested consent to search his backpack. PHILPOT refused and attempted to quickly walk away. While doing so, law enforcement personnel were able to see what appeared to be the front end of a rifle barrel

2

protruding from the fabric near the bottom of the backpack. It was announced by a law enforcement officer that PHILPOT was armed.

9.     PHILPOT was detained. When questioned about walking away, PHILPOT explained he wanted to put the guns in his vehicle. Subsequent to a pat down, a firearm was located in his waistband and an additional firearm was located in his backpack. Further, both firearms were loaded with ammunition. PHILPOT was transported to a nearby police department for further questioning.

10.     Crime analysts were able to determine through law enforcement database searches that PHILPOT's birth name was CHESTON KONTRAS CARLISLE. The search of this name through law enforcement databased resulted in a criminal history of numerous felony convictions, including a 2001 Possession of a Sawed-Off Shotgun, Rifle, Machine Gun, or Dangerous Weapon, and a 2001 Purchase, Possession, Manufacture, Distribution, or Sale of Marijuana. It was further learned that PHILPOT has not had his rights to possess a firearm or ammunition, restored.

11.     PHILPOT was interviewed by a Federal Bureau of Investigation (FBI) Special Agent and a Seminole Police Department detective. Post-*Miranda,* PHILPOT made admissions about the name change, his possession of firearms, travelling from Georgia to Florida with the firearms, and his knowledge of his felony convictions.

12.     The two firearms recovered were a 9mm FN pistol, and a 5.56mm KEL-TEC firearm. The firearms travelled across state lines from Georgia to Florida. Additionally, the firearms were loaded and contained ammunition in the magazines, which were manufactured outside of the State of Florida.

## CONCLUSION

**13.** Based on my training and experience, and as further supported by the facts in this affidavit, I respectfully submit that probable cause exists that on or about February 1, 2020, PHILPOT did knowingly and unlawfully possess a firearm and ammunition as a convicted felon, in violation of Title 18, United States Code, Section 922(g).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
SPECIAL AGENT SAMUEL H. BAND
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before me
this _3_ day of March, 2020.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____20-6113-SNOW_____

UNITED STATES OF AMERICA

v.

CHESTON KONTRAS PHILPOT

Defendant.
_____/

## CRIMINAL COVER SHEET

1.  Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013?    _____ Yes    ___X___ No

2.  Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014?    _____ Yes    ___X___ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _____
BROOKE LATTA
Assistant United States Attorney
Fla. Bar No. 105315
99 Northeast 4th Street
Miami, FL. 33132-2111
Tel: (305) 961-9050
Fax: (305) 536-4699
Brooke.Latta@usdoj.gov